### RUMMEL *v.* NEW YORK, L. & W. RY. CO.

*(Superior Court of Buffalo, General Term. March 24, 1890.)*

HIGHWAYS—OBSTRUCTION—RIGHTS OF INDIVIDUALS.

A purchaser of a lot bounded on a street dedicated to the public, whose deed does not purport to give him any right in the street beyond the general public, cannot

recover damages against a railroad company for building an embankment across the street 200 feet from his premises, thus rendering the portion of the street on which the lot is situated less accessible.[1]

Appeal from trial term.

Action by Balthaser Rummel against the New York, Lackawanna & Western Railway Company. There was a verdict for plaintiff, and from the judgment entered thereon in his favor defendant appeals.

Argued before TITUS and HATCH, JJ.

*Rogers, Lock & Milburn*, for appellant.   *White & Simons*, for respondent.

TITUS, J.   This action is brought against the defendant for closing Goethe street with an embankment. It appears that some time prior to 1877, Joseph Churchyard, who was the owner of a tract of land, caused it to be surveyed and laid out into lots, with public streets, and filed a map of such tract, showing the blocks, lots, and streets in the county clerk's office. Among the streets so laid out and represented upon such map was Goethe street, running from Broadway southerly to William street. Goethe street was opened and graded, and had, to some extent, been used by the public in traveling over it. In 1880 the plaintiff bought of Churchyard, by contract, 60 feet of land fronting on Goethe street, and received his deed, July 19, 1882. Afterwards the defendant built its railroad across Goethe street; and since that time, and before the commencement of this action, built an embankment some 20 feet high, on which its railroad track now rests. The plaintiff's property is situated on the west side of Goethe street, about 300 feet north of Lovejoy street, and about 200 feet south of where the defendant's railroad crosses. The plaintiff claims that by reason of his purchase, with reference to the map on file in the county clerk's office, he has a right to insist that Goethe street at the point where the railroad crosses shall not be closed; and seeks to recover upon the theory that he has an easement in the street by virtue of his deed of purchase for which he can recover damages. There is no question about the general proposition of law that, when an owner of property lays it out into lots for building purposes, and makes a map showing the streets and lots abutting on them, and then conveys these lots, referring to such map, his grantees take an easement in the street as appurtenant to their lots. *In re Mayor*, 2 Wend. 472; *Smyles* v. *Hastings*, 22 N. Y. 217; *Cox* v. *James*, 45 N. Y. 557; *Taylor* v. *Hopper*, 62 N. Y. 649.

It is claimed that there had been no dedication of Goethe street to public uses at the time the defendant built its embankment, so as to vest in the public any right in the street. To dedicate a street to the public there must be a present intention on the part of the owner to abandon his property to the public's use,—to grant a permanent right of way over his land for public purposes, accompanied by an actual opening to the public on the one side, and an acceptance by the public on the other, manifested either by some formal municipal act or by a common user by the public. *Holdane* v. *Trustees*, 21 N. Y. 474. But, as between persons who purchase lots bounded on a street dedicated to the public and a grantor, the purchaser acquires a right or easement in the street by virtue of his deed which will be enforced against his grantors or subsequent grantees, should they attempt to close it; and this, without reference to the question whether there has been a dedication of the street and acceptance by the public. In the one case, the private owner may insist that the street shall be kept open by virtue of the implied covenant in his deed or contract of purchase, and, in the other, the public may maintain

---

[1] Concerning the right of owners of land on which railroad tracks are laid to compensation for damages occasioned thereby, see Mortimer v. Railway Co., 6 N. Y. Supp. 898, and note; Thompson v. Railroad Co., (N. J.) 14 Atl. Rep. 897, and note; Adams v. Railroad Co., (Minn.) 39 N. W. Rep. 629, and note; Appeal of Beidler, (Pa.) 17 Atl. Rep. 244, and note. See, also, Telegraph Co. v. Williams, (Va.) 11 S. E. Rep. 106, and note.

an open street by virtue of a public dedication and acceptance. In the one case, a purchaser, as against the grantor, may insist that he shall have necessary and reasonable access to his land, and that the street shall not be closed in such a way as to deprive him of that right; in the other, the public may insist that the street shall be kept open its entire length, independent of the question of the rights or convenience of abutting or adjacent land-owners. The plaintiff's deed does not purport to give any right in the street, and the easement which the plaintiff has springs from the necessary right of access to his land, and is appurtenant to it. *Wheeler* v. *Clark*, 58 N. Y. 267. The fact that the construction of the railroad by the defendant under its charter, and the grant from the common council, has made it less convenient to the plaintiff, and possibly made his property less desirable or of less value, does not give him a right to action or right to damages. *Coster* v. *Mayor*, 43 N. Y. 399; *People* v. *Kerr*, 27 N. Y. 188; *Ottenot* v. *Railroad Co.*, 23 N. E. Rep. 169.

The plaintiff has no such interest in the public street, unless by virtue of his deed, as that he can maintain an action for damages for its obstruction at a remote point which does not interfere with the reasonable enjoyment of his property. The damage must be an immediate consequence of the act complained of; and, if access to his property is made more inconvenient, it does not entitle him to damages. *Coster* v. *Mayor*, *supra*. If the plaintiff can maintain an action for damages for closing Goethe street at a point remote from his land, it would seem to follow that any person owning property on the line of a street, no matter how remote from an obstruction, can also maintain such an action. I do not understand that one having the right to use a street only in common with the public can maintain an action for damages, unless his property is encroached upon. *Hier* v. *Railroad Co.*, 40 Hun, 310.

It is not questioned that the plaintiff has such a right in the street by reason of the implied covenant in his deed that he can maintain an action against any one for closing the street and shutting off access to his property, but that is not this case. The defendant's railroad crosses Goethe street about 200 feet north of the plaintiff's lot. Goethe street runs to Lovejoy street on the south, and on the north of the plaintiff's lot the defendant has deeded a strip of land 50 feet wide to the city for purposes of a street along-side its embankment, connecting and continuing Goethe street to Schiller street; thence along Schiller street to Ogden street, where a crossing has been prepared under the defendant's railroad; thus giving residents on Goethe street a continuous way north, and across the railroad of the defendant. It is probably less convenient for the residents on Goethe street going north to Broadway by the route now open than it was by a direct route north through Goethe street before it was closed by the defendant, but I do not think that fact alone is controlling of his right to maintain this action. The question is, has he reasonable and convenient access to his property? It seems to me it cannot be said, as a matter of law, as Goethe street is now laid out and opened, he has not such reasonable and convenient access. It is said in *Hier* v. *Railroad Co.*, *supra:* "We are of the opinion that the plaintiff acquired no interest in Olive street beyond the general public, (except the way by necessity,) by reason of the description contained in his deed and reference to Green's map. The conveyance does not purport to give any right in or to the street along its course. * * * Nor would an easement pass as an appurtenant, unless it were directly necessary to the enjoyment of the estate granted. A mere convenience is not enough to create a right or easement." It should be borne in mind that the plaintiff's land is in no way interfered with or encroached upon by the defendant's railroad, and the street in front of his premises for 300 feet south and 200 feet north is not obstructed by the railroad crossing; and from the last-mentioned point the street is continued 50 feet wide, along the side of the defendant's land, to Schiller street. In *Ogden* v. *Jennings*, 62 N.

Y., at page 531, the court says: "Easements exist as appurtenant to a grant of lands, and as arising by implication, only by reason of a necessity to the full enjoyment of the property granted. Nothing passes by implication, or as incident or appurtenant to the lands granted, except such rights, privileges, and easements as are directly necessary to the proper enjoyment of the granted estate. * * * It must be an actual and a direct necessity. A mere convenience is not sufficient to create or convey a right or easement, or impose burdens on lands other than those granted as incident to the grant. In all cases the question of necessity controls." In *Fearing* v. *Irwin*, 55 N. Y. 486, it was held that the legislature had the right to pass an act closing a street without providing any compensation to owners of land adjoining, deprived of the right of way therein, when they could have access to such land through another street. The court says: "Though one public way to property is closed, if there is another left, the property owner sustains no actionable damage." So it would seem that, to entitle the plaintiff to recover in this case, there must be a deprivation by the defendant of his right of access to his land; and the simple fact that the street north of his land has been deflected and turned into Schiller street does not bring him within the authorities which hold that a party is entitled to damages for closing a street. His right to use the street where the railroad crosses is a common right, which other citizens enjoy equally with him, and such a one as public authorities may regulate without being subject to damages. *Coster* v. *Mayor*, and *Badeau* v. *Mead*, 14 Barb. 328. If I am right in the conclusion which my examination has led me to, then it follows that the plaintiff, upon the evidence, cannot maintain his action against the defendant, and that the motion of the defendant's counsel for the direction of a verdict in his favor should have been granted. The judgment should therefore be reversed, with costs to abide the event.

HATCH, J. I fully concur with the conclusion reached by Judge TITUS upon the main questions in this case, and for the reasons stated in his opinion. Further discussion of the points involved would be unnecessary, were it not for the fact that, in many other cases now pending, a question relating to the rule of evidence, adopted and applied in the present case, has been questioned as it has been here. It is therefore thought best to state it, and our conclusions thereon. The court upon the trial charged the jury that the measure of damages was the difference in the rental value of the premises with and without the blockaded street. The claim is that, as plaintiff has continously occupied the premises, there has been no loss of rents, and that consequently the damage must rest in such loss as has been occasioned by increased expense, burden, and inconvenience, created by the obstruction of the street. It seems to be conceded that rental value might be proper evidence of the damage sustained, but that as a measure of damage it cannot be upheld. No case is found making such distinction, and, at the most, it seems to be a distinction without a difference. The definition of the term "rent" shows it to be a profit, in money, goods, or labor, issuing out of lands and tenements, in retribution for the use. 3 Kent, Comm. (12th Ed.) 460; Chase, Bl. Comm. (2d Ed.) 238. It seems logical, at least, that the profit of the use must depend upon the earnings of the property for a contemplated purpose; and if, by reason of extraneous circumstances, such profit is diminished, the value of the use is diminished, and under such conditions it can matter nothing whether the owner makes use of them himself, or leases to another; for, in either case, the loss of profit is the same. It therefore comes back to the point, not whether there has been a loss of rents, but whether, if the extraneous circumstances creating damage had not existed, the use of the premises would have produced more profit. The learning of courts and lawyers has finally formulated a rule applicable to such case, and, as stated, it is the

diminished value of the use; and where property is rented, or its rental value may be determined in the market, such rental value furnishes the most satisfactory evidence from which to measure the loss of profit sustained. *Francis* v. *Schoellkopf*, 53 N. Y. 152. In *Tallman* v. *Railroad Co.*, 2 N. Y. Supp. 130, the plaintiff was the owner of vacant and unimproved property, and the rule of damage laid down was the value of the use. This, as we have already seen, was only another way of stating what the use could have been sold for during the period claimed; in other words, rented for. The difficulty in the case was, not as to the rule, but of the failure of evidence to establish a state of facts to which it could be applied; and, as there was no marketable rental value, proof was given of surrounding conditions and circumstances, and from them the jury were required to fix the value of the use. *Drucker* v. *Railway Co.*, 106 N. Y. 157, 12 N. E. Rep. 568; *Barrick* v. *Schifferdicker*, 1 N. Y. Supp. 21. Counsel for appellant relies upon *Bank* v. *Railroad Co.*, 53 N. Y. Super. Ct. 412. The authority concedes that the rule, heretofore stated, is applicable to the case of an individual suing to recover damages for an act which renders the premises disagreeable and uncomfortable. But it claims the rule to be different in the case of a corporation where premises are made disagreeable and uncomfortable to its agents and servants by the act of another, when there is no evidence showing that such disagreeable conditions imposed upon the corporation any additional expense in the management of its business, or in any other way; and this is placed upon the ground that discomfort to the servant in the performance of his duties, standing alone, is no evidence of damage to the corporation. This case was so limited and applied by Judge FREEDMAN, of the same court, in *Kearney* v. *Railway Co.*, 14 N. Y. St. Rep. 854, 855. As so limited, it decides no question in conflict with the views here advanced. This contention may not, therefore, be sustained.